HIGHT *v.* RICHMOND PARK IMPROVEMENT COMPANY.

CONRADIS *v.* RICHMOND PARK IMPROVEMENT COMPANY.

---

IMPROVEMENT COMPANY; FOREIGN CORPORATION; ULTRA VIRES CONTRACT; PUBLIC POLICY; TRUST FUND; FRAUD; REMEDY IN EQUITY; APPEAL; TRANSCRIPT OF EVIDENCE; PRIORITY OF CLAIM.

1. A contract by a corporation within the powers conferred upon it by its charter and authorized by the laws of the state in which it was created is not *ultra vires.*

2. A contract by a Virginia corporation involving real estate transactions in the District of Columbia in which, under sec. 605 of the District Code (31 Stat. at L. 1284, chap. 854) a corporation organized within the District is not authorized to engage, cannot be held void as against public policy in an action between the parties even if the corporation might be restrained from engaging in such business in an action by the government. (Citing *Groo* v. *Norman & Robinson.* 42 App. D. C. 387, 389.)

3. Where one promises to do a certain thing, having at the time no intention of keeping his agreement, it is a fraudulent misrepresentation of a fact, and actionable as such.

4. A contract by a real estate improvement company by which it parts with title to a number of lots on each of which the other party

agrees to erect a building to cost not less than a specified sum, with a right to give a first deed of trust thereon in amount not to exceed four fifths of the cost specified while, without incurring any personal liability on his part, the purchase money on the lots is to be secured by second deeds of trust as the houses are completed and sold, makes the fund thus created by these second deeds of trust a trust fund for the benefit of the improvement company, and, if the builder defeats the object of the trust by erecting buildings costing less than the agreed amount, he becomes in equity a trustee *ex maleficio* for the improvement company.

5. An appellant cannot omit a transcript of the evidence in an equity cause, or a bill of exceptions in a law case, and take advantage of favorable findings based upon the evidence which are inconsistent with the record upon which the appeal is based; neither can the appellee be forced to perfect appellant's record.

6. Where a trust has been created as part of the consideration entering into contract, and one of the parties to whom its execution has been intrusted is fraudulently dissipating the fund expressly created to secure the faithful performance of the contract, the other party may invoke relief in equity to prevent the continuation of the fraud; and where equity thus takes jurisdiction it has jurisdiction for all purposes.

7. Where a trust fund for the specific purpose of erecting houses on certain lots under a contract by an improvement company providing for the erection of them by the other party, who is given an option for the purchase of the lots, and who for that purpose, as authorized by the contract, obtains a loan of money to pay for building the houses by procuring a bond from a casualty company for the completion of them free from liens, stipulating that the casualty company should disburse the money in order that it should all be available to pay the bills for labor and material, the improvement company is estopped to claim an equitable right to the fund thus created as against persons who have unpaid claims for labor and materials.   (Citing *Anglo-American Sav. & L. Asso.* v. *Campbell,* 13 App. D. C. 581, 600.)

Nos. 3085 and 3089.  Submitted February 8, 1918.  Decided April 1, 1918.

HEARING on appeals by the defendants from a decree and an order of the Supreme Court of the District of Columbia. *Affirmed* as to one defendant, and *reversed* as to the other defendants.

The COURT in the opinion stated the facts as follows:

Appellee, Richmond Park Improvement Company, hereinafter, for convenience, referred to as the improvement company, filed a bill in equity in the supreme court of the District of Columbia on April 28, 1916, naming as defendants C. B. Hight; Charles A. Valentine; G. Pitts Raleigh and Charles H. Buck, trustees; Harry E. Karr; Maryland Title Company, a corporation; the New Amsterdam Casualty Company, a corporation; James E. Edmunds and S. V. Kemp, trustees. From a decree in favor of the improvement company, defendant Hight alone appeals.

In the second case here involved, Louis Conradis; Walter G. Eisinger, surviving partner of Frank J. Eisinger, and Walter G. Eisinger, trading as Eisinger Bros.; W. Stokes Sammons, trading as "the Shade Shop," a corporation; Artistic Lighting Shop, a corporation; the W. E. Thompson Company, a corporation; and Indiana Flooring Company, a corporation,—petitioned the court below to be allowed to intervene as defendants. The petition was granted, and the interveners filed an answer which, on motion of the improvement company, was stricken out by the court. From this order the intervening defendants, with the exception of the Artistic Lighting Shop and the Indiana Flooring Company, have appealed.

The appeals can be consolidated and disposed of in a single opinion.

It is averred in the bill that the improvement company, a corporation organized under the laws of the State of Virginia, owned a large amount of real estate in the District of Columbia, which it had "subdivided into blocks and lots, with streets laid off and constructed through the same for the purpose of selling said lots—many hundred in number—for high-class residential purposes, pursuant to a general scheme for the upbuilding of the subdivision. * * * In order to secure the construction of twelve desirable detached residences costing not less than $5,000 each on twelve of the lots," the improvement company gave to Hight a written contract, by the terms of which Hight was given the option of purchasing the lots.

The contract, after stating certain conditions respecting the

improvement of the streets, water, sewerage, etc., which are not here important, provided that "the said C. B. Hight is to have the right to place on each lot or lots a building loan to be secured by a first deed of trust on said property in amount not to exceed four fifths of the cost of the contemplated improvements. The plans and specifications of said improvements to be satisfactory to the said Richmond Park Improvement Company, Inc., or its duly authorized representative. Said lots to be paid for by said C. B. Hight at the rate of 35 cents per square foot. Payment to be made in the promissory notes of a so-called 'straw man' to the order of said Richmond Park Improvement Company, Inc., at two years, 6 per cent interest from date; the said notes to be secured by second deeds of trust on said lots, subsequent only to said building loans. It is distinctly understood that there is no personal obligation on the part of the said C. B. Hight for the payment of said notes secured by second deeds of trust. As the houses are completed and sold, the above-mentioned second trusts given for purchase money on the lots are to be be exchanged with said C. B. Hight for whatever the cash payment amounts to over one thousand dollars ($1,000) in cash, and the balance in the alternate first, third, fifth, seventh, etc., monthly notes of the purchaser likewise secured by second deed of trust on said lots, subsequently only to said building loan. Should the cash payment be $1,000 or less, then no cash is to pass for the release of the first above-mentioned second trusts, and same to be exchanged for equal amount of buyers' alternate notes as described above."

It is averred that Hight exercised the option to purchase; furnished the improvement company with blue prints and specifications for the houses which he proposed to build; and sent it a letter, dated November 8, 1915, in which he stated that "the cost of the improvements as contemplated and covered by blue prints and specifications will be over five thousand dollars ($5,000) per house."

It is further averred that "in order that plaintiff might be assured that the proposed dwelling on each of said lots would cost not less than $5,000,  *  *  *  plaintiff, before the delivery of its deed conveying said twelve lots,  *  *  *  did  *  *  *  demand that said defendant Hight should, as a part

of his contract with plaintiff, expressly and specifically state and agree in writing that each dwelling to be erected on each of said lots would cost not less than $5,000, and that said defendant C. B. Hight    *    *    *    wrote plaintiff as follows: 'At the suggestion of your attorney, Mr. Kemp, I beg herewith to advise you that as a part of my contract with you, I will build or have built on the twelve lots numbered 69 to 80 in square 2063 twelve detached dwellings after plans and specifications already submitted and approved by you; namely, four each of the three types A, B, and C, and to cost not less than $5,000 each.' "

Subsequent to this letter, which was dated November 15th, the improvement company, through its president, wrote to Hight, under date of November 19, 1915, as follows: "I have your favor of the 18th instant inclosing me a copy of the specifications for the new houses at Thirty-fifth and Rodman streets. We will leave the matter of the specifications to you, as we are very much pleased with the houses you have already built, and we have no doubt that we will be equally pleased with those you are now about to build. If the plans and specifications are satisfactory to you, and the houses will cost at least $5,000 each, they will be satisfactory to us."

The bill then recites, in substance, that the lots were deeded to Valentine, the straw man; that under the first trust Hight in a circuitous manner, not here material, through Valentine and wife and defendants Raleigh and Buck, as trustees, and defendant Karr, secured from defendant Maryland Title Company a loan of $4,000 on each of the twelve lots. The title company required as a condition of making the loan "that the said dwellings when completed should be free of all mechanics' liens thereon, and demanded    *    *    *    that they be protected by the bond of a surety company conditioned upon the completion of the said dwellings free of all such liens. The said defendant New Amsterdam Casualty Company agreed to write such a bond conditioned upon the completion of the said houses free of all such liens, provided    *    *    *    the whole amount of the said $48,000 [be] paid to it, the said defendant, the New Amsterdam Casualty Company, in order that it might be assured that

the whole of said building loan might be available for the bills of labor and materialmen in constructing said dwellings."

It is also averred that at the same time Valentine and wife executed a second deed of trust to defendants Edmunds and Kemp, trustees, in the sum of $20,842.50, represented by twelve notes to secure plaintiff improvement company for the purchase price of the lots, and that "as part of the same transaction" Valentine and wife by deed "conveyed the said lots to the defendant C. B. Hight."

It is also averred that, when a large part of the money had been disbursed by the casualty company, and ten of the houses had been almost completed and the erection of the two remaining houses had been just started, plaintiff improvement company "learned for the first time that the said dwellings which were being erected were of such construction that when completed they would cost far less than $5,000 each, and that it would have practically no security for the purchase price of the said lots.  *  *  *  As soon as information of this character was received by plaintiff, it caused an examination and investigation to be made as to the cost of the said houses by competent persons, and plaintiff has been advised and informed by such persons that each of said houses when completed will cost far less than $5,000; that no one of said houses when completed will cost as much as $4,000, but that they will each cost about $3,550; and that it will have practically no security, if any at all, for the purchase price of the land upon which the said houses are being erected, this being the indebtedness represented by the said notes secured by the said second deed of trust. Plaintiff avers that such information is true, and that said houses completed will have cost only, to wit, $3,550.  *  *  * That said defendant C. B. Hight, at the time he entered into said contract  *  *  * and at the time he wrote the said letters  *  *  * and at all times since, had no intention whatever to build on said premises houses of the value of $5,000; but that while he was making such promises and assurances to plaintiff without incurring any personal liability himself on the notes," Hight at all times intended to construct houses costing less than $4,000,

and to appropriate for his own use the difference between the actual cost of the dwellings and the $4,000 building loan.

Fraud is averred at length, in that Hight entered into the contract knowing that the houses would cost much less than $4,000 each; that it was his intention to permit the first trust to be foreclosed after he had appropriated to his own use the difference between the cost of the houses and the amount of the loan; that at the time of submitting the plans and specifications he fraudulently represented that the houses would cost $5,000 each; that he knew at the time of submitting the plans and specifications that the houses would cost not to exceed $3,550 each; that by constructing such houses he is knowingly committing a fraud upon plaintiff improvement company; that by reason of the fraudulent representations thus made plaintiff improvement company was induced to enter into said contract and part with the title to its lots, and that Hight had knowledge of these facts when he fraudulently procured the delivery of the deed from the improvement company.

The improvement company prayed that the title company and the casualty company be enjoined from paying the balance of said loan to Hight, "and that the balance of said loan be paid into the hands of a receiver to be appointed herein, and be applied under the direction of this court in such manner as to protect the plaintiff, as far as possible, against loss from the fraudulent notes of the defendant Hight in the premises;" that Hight be enjoined from prosecuting the construction of the houses; that he be made to discover and give complete information as to the cost of the houses; that necessary and proper accounts be taken; that Hight be restrained from renting the houses; "that a personal decree be entered herein against the defendant C. B. Hight in favor of the plaintiff for such damages as the plaintiff has or may sustain by reason of the premises," and for such other relief as to the court may seem proper.

Hight moved to dismiss the bill on the following grounds: Because it fails to set forth facts sufficient to constitute a cause of action; because the contract was beyond the power of the improvement company to make, is therefore *ultra vires*, against public policy, void, and unenforceable; because there is an ade-

quate remedy at law; and because the bill fails to show any equities in favor of the improvement company.

*Honorable Daniel Iben Wright* and *Mr. I. Morris Wampler,* for the appellant in No. 3085, cited in their brief:

*Adler* v. *Fenton,* 65 U. S. 407; *Ahl's Appeal,* 129 Pa. 49; *Amick* v. *Ellis,* 53 W. Va. 421; *Andrus* v. *St. Louis Co.* 130 U. S. 643; *Bank* v. *Coquillard,* 6 Ind. 232; *Bement* v. *National Harrow Co.* 186 U. S. 70; *Boston Blower Co.* v. *Carman Lumber Co.* 94 Va. 94; *Boonsville Nat. Bank* v. *Blakey,* 166 Ind. 427; *Brauer* v. *Laughlin,* 235 Ill. 265; *Bradford* v. *Long,* 4 Bibb. 225; *Brent* v. *Gay,* 149 Ky. 616; *Bryan* v. *Cowatt,* 21 Ala. 92; *Buzard* v. *Houston,* 119 U. S. 347; *Capen* v. *Leach,* 182 Mass. 175; *Central Transp. Co.* v. *Pullman Car Co.* 139 U. S. 24; *Clark* v. *Smith,* 90 App. Div. 477; *Clark* v. *Spears,* 7 Blackf. 96; *Collier* v. *Collier,* — N. J. Eq. —, 33 Atl. 193; *Crowell* v. *Young,* 4 Ind. Terr. 36; *Cooper* v. *Armstrong,* 3 G. Green, 120; *Castelli* v. *Traham,* 77 App. Div. 472; *Continental Wall Co.* v. *Voight,* 212 U. S. 227; *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 728–733; *Curriden* v. *Middleton,* 232 U. S. 635; *Dakin* v. *Union P. R. Co.* 5 Fed. 665; *Davis* v. *Janway,* L.R.A. 1916D, 722, 155 Pac. 241; *Davis* v. *Silverton,* 47 Or. 171; *Denny* v. *McCown,* 34 Or. 47; *Dodd* v. *Home Mut. Ins. Co.* 22 Or. 3; *Ellison* v. *Adams Exp. Co.* 245 Ill. 415; *Embrey* v. *Jemison,* 131 U. S. 336; *Gamage* v. *Harris,* 79 Me. 531; *Gallick* v. *Engelhardt,* 36 Miss. 269; *Glover* v. *Farr,* 23 S. C. 480; *Gibbs* v. *Gas. Co.* 130 U. S. 396; *Groo* v. *Norman & Robinson,* 42 App. D. C. 387; *Hall* v. *Coppell,* 74 U. S. 542; *Hall* v. *Corcoran,* 107 Mass. 251; *Hildebrant* v. *Savage,* 4 Wash. 524; *Johnson* v. *Hulings,* 103 Pa. 498; *Lewis* v. *Yale,* 4 Fla. 418; *Love* v. *Morrill,* 19 Or. 545; *McDonald* v. *New York,* 58 App. Div. 73; *McMullen* v. *Hoffman,* 174 U. S. 638; *Mansfield* v. *Bank of Monett,* 74 Mo. App. 200; *Miller* v. *Ammon,* 145 U. S. 421; *Mitchell* v. *McDowell,* 105 U. S. 718; *Multnomah County* v. *Portland Cracker Co.* 49 Or. 345; *Oscanyan* v. *Winchester Arms Co.* 103 U. S. 267; *Park* v. *City Theatre Co.* 215 N. Y. 322; *Park* v. *Minneapolis R. Co.* 114 Wis. 347; *Pond* v. *Lock-*

*wood*, 8 Ala. 669; *Printup* v. *Mitchell*, 17 Ga. 558; *Pullman Palace Car* v. *Central Transp. Co.* 171 U. S. 139; *Reinicker* v. *Smith*, 2 Harr. & J. 421; *Robertson* v. *Hogshead*, 3 Leigh, 667; *Robinson* v. *Brooks*, 31 Wash. 60; *Root* v. *Railway Co.* 105 U. S. 190; *Rogers* v. *Durant*, 106 U. S. 644; *Russel's Appeal*, 1 Walker (Pa.) 131; *Russell* v. *Clark*, 7 Cranch, 69; *Rosenheimer* v. *Standard Gaslight Co.* 39 App. Div. 482; *Sayer* v. *Brown*, 7 Ind. Terr. 675; *Scott* v. *Billgerry*, 40 Miss. 119; *Scott* v. *Nealy*, 140 U. S. 106; *Stemmer* v. *Scottish Ins. Co.* 33 Or. 65; *Slaughter* v. *Gerson*, 80 U. S. 379; *Slidell* v. *Prichard*, 5 Rob. (La.) 101; *Smythe* v. *Evans*, 209 Ill. 376; *Southern Development Co.* v. *Sylvia*, 125 U. S. 247; *Schroeder* v. *Ennis.* 5 N. Y. S. R. 881; *Slaughter* v. *Nash*, 1 Litt. (Ky.) 322; *Sims* v. *McEwen*, 27 Ala. 184; *Sinclair* v. *Fitch*, 3 E. D. Smith, 677; *Swan Co.* v. *Frank*, 142 U. S. 603; *Teal* v. *Walker*, 111 U. S. 242; *Thomas* v. *Railway*, 101 U. S. 71; *Thomas* v. *Railroad Co.* 73 U. S. 134; *Toledo, etc., R. Co.* v. *St. L. & C. R. Co.* 208 Ill. 621; *Townsend* v. *Vanderwerker*, 9 Mackey, 197; *Transportation Co.* v. *Pullman Co.* 139 U. S. 24; *United States* v. *Bitter Root Co.* 200 U. S. 451; *Union Stock Co.* v. *Nashville Packing Co.* 140 Fed. 701; *Van Raalt* v. *Schneck*, 159 Fed. 248; *Vendome Turkish Bath Co.* v. *Schettler*, 2 Wash. 457; *Weyer* v. *Beach*, 79 N. Y. 409; *Woodstock Co.* v. *Extension*, 129 U. S. 643–661; *Zerinque* v. *Tex., etc., R. Co.* 34 Fed. 239; D. C. Code, sec. 605.

*Mr. Daniel W. O'Donoghue*, for the appellee in No. 3085, cited in his brief:

*Anglo.-Amer. Asso.* v. *Campbell*, 13 App. D. C. 581; Beach, Foreign Corp. sec. 113; *Bement & Sons* v. *Harrow Co.* 186 U. S. 70; *Blodgett* v. *L. Zinc Co.* 120 Fed. 893; Bouvier's Law Dict. Rawle's 3d Rev. Ultra Vires; *Cent. Trans. Co.* v. *Pullman Car Co.* 139 U. S. 24; *Chicago, etc., R. Co.* v. *R. Co.* 47 Fed. 15; *Cont. Wall Paper Co.* v. *Voight*, 212 U. S. 227; *Cooper Mfg. Co.* v. *Ferguson*, 113 U. S. 728; *Cowell* v. *Colorado Springs Co.* 100 U. S. 55; *Cumberland Gas Co.* v. *W. Va. & M. Gas Co.* 188 Fed. 585; *Deringer* v. *Deringer*, 5 Houst.

(Del.) 416; *Embrey* v. *Jennison*, 131 U. S. 336; *Fayette Land Co.* v. *L. & N. R. Co.* 93 Va. 274; *Fletcher* v. *Fletcher*, 43 App. D. C. 180; *Fritts* v. *Palmer*, 132 U. S. 282; *Gatewood* v. *New River C. & C. Co.* 239 Fed. 65; *Gibbs* v. *Gas Co.* 130 U. S. 396; *Gladman* v. *Stoddart*, 42 App. D. C. 346; *Godfrey* v. *Roessle*, 5 App. D. C. 299; *Gold-Min. Co.* v. *Nat. Bank*, 96 U. S. 640; *Groo* v. *Norman & Robinson*, 42 App. D. C. 387; *Hall* v. *Coppell*, 74 U. S. 542; *Hagerstown Mfg. Co.* v. *Keedy*, 91 Md. 430; *Hanover Nat. Bank* v. *Bank*, 109 Fed. 421; *Hickory F. O. Co.* v. *Buffalo: etc., R. Co.* 32 Fed. 22; *Hight* v. *Rich. Park Improv. Co.* 45 App. D. C. 583; *Hight* v. *McCoy*, Orig. Dock. No. 475, — App. D. C. —; *Hight & Co.* v. *Rich. Park Improv. Co.* Orig. Dock. No. 470, — App. D. C. —; *Hines* v. *Hines*, 43 App. D. C. 280; *Iowa L. G. M. Co.* v. *U. S. F. & G. Co.* 146 Fed. 437; *Jones* v. *Van Doren*, 130 U. S. 684; *Kerfoot* v. *Farmers & M. Nat. Bank*, 218 U. S. 281; *Logan C. Nat. Bank* v. *Townsend*, 139 U. S. 67; *Lyon* v. *Russell*, 41 App. D. C. 554; *McMullen* v. *Hoffman*, 174 U. S. 638; *Mannington* v. *Hocking Valley R. Co.* 183 Fed. 133; *Miller* v. *Ammon*, 145 U. S. 421; *National Bank* v. *Whitney*, 103 U. S. 99; *Oregon R. & Nav. Co.* v. *Dumas*, 181 Fed. 781; *Oscanyan* v. *Winchester R. Arms Co.* 103 U. S. 261; *Palmer Window G. Co., Re*, 103 Fed. 982; *Pangborn* v. *Westlake*, 36 Iowa, 546; *Printing Co.* v. *Sampson*, L. R. 19 Eq. Cas. 462; *Pullman P. Car Co.* v. *Central Transp. Co.* 171 U. S. 139; *Reorganized Church, etc.,* v. *Church of C.* 60 Fed. 937; *Rozer* v. *May*, 43 App. D. C. 103; *Runyon* v. *Coster*, 14 Pet. 122; Story, Contr. "Public Policy;" 1 Story, Eq. Jur. (13 ed.), chap. 5, pp. 265, 309, 310; *Teal* v. *Walker*, 111 U. S. 242; *Thomas* v. *Railway Co.* 101 U. S. 71; *Trust & Bkg. Co.* v. *Willis*, 6 App. D. C. 375; *Union Nat. Bank* v. *Matthews*, 98 U. S. 621; *United States* v. *Freight Asso.* 166 U. S. 290; *Willis* v. *Trust & Bkg. Co.* 169 U. S. 295; *Woodstock Co.* v. *Extension Co.* 129 U. S. 643.

*Mr. Hayden Johnson,* for the appellants, in No. 3089, cited in his brief:

*Abelman* v. *Booth*, 21 How. 506; *Ayres* v. *United States,*

42 Ct. Cl. 385; *Baker* v. *Baldwin*. 187 U. S. 61; *Baldwin* v. *Keith,* 13 Okla. 624, 75 Pac. 1124; *Barden* v. *Railroad Co.* 154 U. S. 288, 327; *Bartlett* v. *Lockwood,* 160 U. S. 357; *Beals* v. *Cone,* 188 U. S. 184; *Bertwell* v. *Haines,* 10 Okla. 469, 63 Pac. 702; *Bette* v. *Amonett,* 4 La. Ann. 363; *Burke* v. *So. Pac. R. Co.* 234 U. S. 669; *California Powder Works* v. *Davis,* 151 U. S. 389; *Carr* v. *Fife,* 156 U. S. 494; *Deffebach* v. *Hawke,* 115 U. S. 392; *Delamar's Nevada Gold Min. Co.* v. *Nesbit,* 177 U. S. 523; *Diamond Coal & Coke Co.* v. *United States,* 233 U. S. 236; *Dredge* v. *Forsythe,* 67 U. S. 563; *Ferry* v. *Street,* 4 Utah, 521; *Florida C. & P. R. Co.* v. *Bell,* 176 U. S. 321; *Forbes* v. *Driscoll,* 4 Dak. 336; *French* v. *Fyan,* 93 U. S. 169–172; *Fulton* v. *McAffee,* 16 Pet. 149; *Gibson* v. *Choteau,* 13 Wall. 92; *Gordon* v. *Caldcleugh,* 3 Cranch, 268; *Gwillem* v. *Donnalen,* 115 U. S. 45; *Hamblin* v. *Western Land Co.* 147 U. S. 531; *Harrington* v. *Wilson,* 10 S. D. 606–608; *Hawley* v. *Diver,* 178 U. S. 476; *Heath* v. *Wallace,* 138 U. S. 573–585; *Jameson* v. *James,* — Cal. —, 100 Pac. 700; *Johnson* v. *Towsley,* 13 Wall. 73–83; *Kerns* v. *Lee,* 142 Fed. 995; *Kerr* v. *Snowden,* — Cal. App. —, 140 Pac. 704; *King* v. *McAndrews,* — C. C. A. —, 111 Fed. 860; *Knight* v. *Association,* 142 U. S. 161–212; *Lee* v. *Johnson,* 116 U. S. 48, 49; *Logan* v. *Davis,* 233 U. S. 613; *Lyle* v. *Patterson,* — C. C. A. —, 176 Fed. 909; *McClung* v. *Silliman,* 6 Wheat. 598; *McIntire* v. *Wood,* 7 Cranch, 504; *Marquez* v. *Frisbee,* 101 U. S. 476; *Menard* v. *Aspasia,* 5 Pet. 505; *Michigan Land & Lumber Co.* v. *Rust,* 168 U. S. 589, 592, 593; *Minter* v. *Crommelin,* 18 How. 87–89; *Missouri* v. *Andriano,* 138 U. S. 496; *Montgomery* v. *Hernandez,* 12 Wheat. 129; *Noble* v. *Railroad Co.* 147 U. S. 174; *Paine* v. *Foster,* 9 Okla. 213, 53 Pac. 159, 9 Okla. 257, 59 Pac. 252; *People* v. *McKelvey,* 19 Colo. App. 131, 74 Pac. 533; *Pierson* v. *Loveland,* — Idaho, —, 102 Pac. 340; *Quinby* v. *Conlon,* 104 U. S. 26; *Reddall* v. *Bryan,* 24 How. 420; *Refining Co.* v. *Kemp,* 104 U. S. 636, 645–647; *Ryan* v. *Thomas,* 4 Wall. 603; *Sanford* v. *King,* 19 S. D. 334–347; *Shepley* v. *Cowan,* 91 U. S. 330; *Shoshone Min. Co.* v. *Rutter,* 177 U. S. 505; *Sparks* v. *Pierce,* 115 U. S. 408; *Steele* v. *Smelting Co.* 106 U. S. 447, 451; *Stewart* v. *McHenry,* 159 U. S. 643;

*Strader* v. *Baldwin,* 9 How. 261; *United States* v. *O. & C. R. Co.* 186 Fed. 861; *United States* v. *Schurz,* 102 U. S. 378–401; *Vantongeren* v. *Heffernan,* 5 Dak. 180–182; *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 97; *West* v. *Edward Rutledge Timber Co.* 210 Fed. 189; *Whitehill* v. *Victorio Land & Cattle Co.* —— N. M. ——, 139 Pac. 184; *Williams* v. *Norris,* 12 Wheat. 117.

*Mr. Daniel W. O'Donoghue,* for the appellee, in No. 3089, cited in his brief:

*Anglo.-Amer. Asso.* v. *Campbell.* 13 App. D. C. 581; Bispham, Eq. Jur. secs. 200, 201, 214, 215, 218; *Bohn Mfg. Co.* v. *Kountz,* 30 Neb. 719; *Curriden* v. *Middleton,* 232 U. S. 633; 1 Daniel, Ch. Pr. 555; *Henderson* v. *Connelly,* 123 Ill. 98; *Hoagland* v. *Lowe,* 39 Neb. 397; *Hight* v. *Rich. Pk. Impr. Co.* 45 App. D. C. 583; *Ins. Co.* v. *Bailey,* 13 Wall. 616; *Moroney's Appeal,* 24 Pa. 373; *Patrick Land Co.* v. *Leavenworth,* 42 Neb. 715; *Richardson* v. *Belt,* 13 App. D. C. 197; *Rogers* v. *Cent. L. & T. Co.* 49 Neb. 676; *Tyler* v. *Moses,* 13 App. D. C. 428; *United States Fid. & G. Co.* v. *United States & M. Tr. Co.* 234 Fed. 238; *United States Trust Co.* v. *Blundon,* 42 App. D. C. 500.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Coming to the grounds advanced by the defendant in his motion to dismiss the bill, it is first urged that the option contract and all the contracts set forth in the bill to which the improvement company is directly a party "are and were at all times beyond the power of the plaintiff corporation to make, are *ultra vires,* unlawful, against public policy, void and unenforceable." Section 605 of the District Code [31 Stat. at L. 1284, chap. 854, as amended by 32 Stat. at L. 533, chap. 1329] provides that "any three or more persons who desire to form a company for the purpose of carrying on any enterprise or business which may be lawfully conducted by an individual, excepting banks of circulation or discount, railroads, and such other enterprise or business as may be otherwise specially provided

for in this Code, may make, sign, and acknowledge, before some officer competent to take the acknowledgment of deeds, and file in the office of the recorder of deeds, a certificate in writing: *Provided,* That nothing herein contained shall be held to authorize the organization of corporations to buy, sell, or deal in real estate, except corporations to transact the business ordinarily carried on by real estate agents or brokers."

The improvement company is a Virginia corporation, with its principal office in that State. Among the charter powers granted is the right "to buy, sell, exchange, and generally deal in real properties improved and unimproved, * * * to build, construct, operate, maintain, lease, and sell dwelling houses, * * * to maintain a general real estate agency and broker's business to act as agent, broker, or attorney in fact for any person or corporation; to make and obtain loans upon real estate, improved or unimproved, and to supervise, manage, and protect such property and loans, and all interests and claims affecting the same; * * * to improve, manage, operate, sell, mortgage, lease, or otherwise dispose of any property. real or personal, wherever located; and to take mortgages and assignments of mortgages upon the same."

The Statutes of Virginia, sec. 1105a, authorize the formation of corporations "for the transaction of any lawful business, or to promote or conduct any legitimate object or purpose, except a railroad company, a telegraph company, a telephone company, a canal company, a turnpike company, or other company which shall need to possess the right of eminent domain for the purpose of taking and condemning lands within this State." It is also provided in sec. 1105c that corporations shall have power, among other things, "to contract and be contracted with, to purchase, hold, and grant such real and personal estate as the purposes of the corporation shall require, and all other real estate which shall have been bona fide conveyed or mortgaged to the said corporation, or for its benefit, by way of security, or in satisfaction of debts, * * * and to mortgage or pledge, or convey by way of deed of trust, or otherwise encumber any such real or personal estate as is mentioned in this subsection."

With the above restrictions of the District Code, the charter

powers of the improvement company and the provisions of the Virginia statutes under which it was incorporated before us, the objection of defendant may be disposed of without difficulty. So long as the improvement company, in making the contracts in question (the option sale contract, the deed to Valentine, and the acceptance of the deed of trust), acted within the powers conferred upon it by its charter, and its charter rights were authorized by the laws of the State in which it was created, they cannot be said to be *ultra vires*. Bouvier's Law Dict. Rawle's 3d Revision, defines *ultra vires* as "the modern technical designation, in the law of corporations, of acts beyond the scope of their powers as defined by their charters or acts of incorporation. A term used to express the action of a corporation which is beyond the powers conferred upon it by its charter, or the statutes under which it was instituted."

It will be observed that the improvement company, in entering into the contracts, was not only acting well within the limitations of its charter, but that the powers conferred by its charter are expressly sanctioned by the laws of Virginia. Acts performed within these limitations cannot be said to be *ultra vires*. But the acts performed by a corporation must not only be authorized by the express or implied terms of its charter, but by the laws of the State which created it. In *Chicago, R. I. & P. R. Co.* v. *Union P. R. Co.* 47 Fed. 15, Mr. Justice Brewer said: "Two propositions are settled. One is that a contract by which a corporation disables itself from performing the functions and duties undertaken and imposed by its charter is, unless the State which created it consents, *ultra vires*. * * * The other is that the powers of a corporation are such, and such only, as the charter confers; and an act beyond the measure of those powers, as either expressly stated or fairly implied, is *ultra vires*. * * * These two propositions embrace the whole doctrine of *ultra vires*."

This brings us to the second ground advanced for the dismissal of the bill,—that the contracts are void as being against public policy. This objection is based upon the provision of sec. 605, *supra*, which forbids the organization of local "corporations to buy, sell, or deal in real estate, except corporations

.to transact the business ordinarily carried on by real estate agents or brokers." But this provision neither declares contracts made in violation of its terms void as against public policy, nor does it expressly apply this restriction to foreign corporations doing business in this District. Assuming for the purposes of the present case that the improvement company comes within the restrictions of the law and is subject to an action by the government to restrain it from engaging in a business declared to be against the public policy of the District of Columbia, what has that to do with the legality of the contracts between the improvement company and Hight or his straw man Valentine? The contracts are neither inherently illegal, nor against public policy. The legality or illegality of this corporation's presence in the District of Columbia is entirely collateral to the transaction in question. In *Groo* v. *Norman & Robinson,* 42 App. D. C. 387, 389, where the statute in question was under consideration, this court said: "The language of this proviso is susceptible of but one interpretation; namely, that no domestic corporation is authorized to hold real estate except as an incident to its business. It clearly is not authorized to hold it for the purpose of selling or dealing in it. Congress having declared a public policy for this District, in this affirmative way, it goes without saying that a foreign corporation will not be accorded greater rights than are enjoyed by domestic corporations. *Metropolitan L. Ins. Co. v. Hawkins,* 31 App. D. C. 493, 498, 14 Ann. Cas. 1092; *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557, 566, 43 L. ed. 552, 555, 19 Sup. Ct. Rep. 281; *Cable* v. *United States L. Ins. Co.* 191 U. S. 288, 307, 48 L. ed. 188, 193, 24 Sup. Ct. Rep. 74. But it by no means follows, from what we have said, that the Loan & Trust Company may not convey a good title to the defendant. The statute in question does not declare a conveyance of real estate to a corporation for an unauthorized purpose void. If Congress had intended this result it would not have left the matter in doubt, but would have expressed its intent in unmistakable terms. *Union Nat. Bank* v. *Matthews,* 98 U. S. 621, 627, 25 L. ed. 188, 189."

In *Cowell* v. *Colorado Springs Co.* 100 U. S. 55, 59, 25 L. ed.

547, 549, a patentee conveyed lands in the then Territory of Colorado to a Pennsylvania corporation, which, like the present corporation, was vested by its charter and the laws of Pennsylvania with broad powers to buy, hold, sell, and deal generally in real estate. It was contended that by reason of a law then in force in the Territories of the United States prohibiting the granting of private charters and permitting the creation by general law only of corporations for mining, manufacturing, and other industrial pursuits, the Pennsylvania corporation had not the capacity to hold and convey real property in the Territory of Colorado. The court, disposing of this contention, said: "The answer to this position is found in the general comity which, in the absence of positive direction to the contrary, obtains through the States and Territories of the United States, by which corporations created in one State or Territory are permitted to carry on any lawful business in another State and Territory, and to acquire, hold, and transfer property there equally as individuals. If the policy of the State or Territory does not permit the business of the foreign corporation in its limits, or allow the corporation to acquire or hold real property, it must be expressed in some affirmative way; it cannot be inferred from the fact that its legislature has made no provision for the formation of similar corporations, or allows corporations to be formed only by general law. Telegraph companies did business in several States before their legislatures had created or authorized the creation of similar corporations; and numerous corporations existing by special charter in one State are now engaged, without question, in business in States where the creation of corporations by special enactment is forbidden."

The volume of authority on this point is so great that it forbids a review of the cases. The rule is settled that want of capacity in a domestic or foreign corporation to own and dispose of real estate can only be asserted by the State. It is unnecessary, therefore, to decide whether or not the business done by the improvement company is against the public policy of the District of Columbia, since in no event is Hight in position to avail himself of this defense, the question being one only which concerns the District of Columbia. Neither are we con-

sidering cases cited where the corporation is seeking to enforce a contract made in excess of the powers granted it by law or by the express or implied terms of its charter, nor the cases where the contract is inherently illegal and against public policy. Here the improvement company is acting within the express terms of its charter, and exercising powers lawful in the State of its creation, and the contract is a lawful contract. If the business conducted is against public policy in this District, that is a question for the government, and Hight is not in a position to take advantage of it.

This brings us to the final ground advanced for dismissal of the bill, that "it is apparent upon the face of the bill that the plaintiff, if entitled to any remedy against the defendant, or any of the defendants, has an adequate remedy at law," and that "the bill fails to show any equities existing in the plaintiff."

The bill bristles with averments of fraud, which are admitted by the motion to dismiss. It is averred that Hight intentionally misrepresented the cost of the houses as shown by the plans and specifications which he produced; that it was through these false representations that the improvement company was induced to part with the title to its property; that in furtherance of this scheme to defraud the improvement company Hight had almost completed ten of the houses at a cost of $3,550 each, and had started the erection of the remaining two houses, which would cost $3,550 each, when the improvement company discovered from an investigation that Hight was not complying with the terms of his contract; that Hight was about to receive from the casualty company the balance of the building loan remaining unexpended, and that Hight is insolvent. The statements of Hight, which, it is averred, induced the improvement company to enter into the contract and deed its property to Valentine, were more than mere expressions of opinion as to values; they amounted to fraudulent misrepresentations within the rule that where one promises to do a certain thing, having at the time no intention of keeping his agreement, it is a fraudulent misrepresentation of a fact, and actionable as such.

With these averments of the bill before us, an interpretation of the contract which induced the improvement company to

part with its property is essential to determine its right to invoke equitable relief.  It is clear that, if it were merely a contract for the erection of houses, its remedy would be at law for damages arising from a breach of the contract; but this contract is more than a mere agreement to erect twelve houses according to plans and specifications, submitted to and approved by the improvement company, at a cost of not less than $5,000 each.  It was in the nature of a joint agreement by which, in consideration of the improvement company parting with its title, Hight was permitted to create a building fund by placing a first trust of $4,000 on each lot.  To this building fund Hight was to add $1,000 per house, and to build houses to cost not less than $5,000 each.  A second trust of about $2,000 per lot, for the payment of which he was relieved of all personal liability, was placed upon the lots to secure the payment of the notes executed by Valentine to the improvement company in payment of the land.  The houses were then to be sold, and out of the proceeds the improvement company was to have its second trust satisfied, either in cash or the notes of the purchasers secured by a second trust.

The fund thus created was for a specific purpose,—the building of the houses,—and for no other.  It was in the nature of a trust fund; and any misapplication of the fund or diversion thereof by Hight from the purpose for which it had been established by the joint agreement of the parties amounted to a fraud; and, as between Hight and the improvement company, Hight became in equity a trustee *ex maleficio* for the improvement company.  "One who by fraudulent misrepresentation obtains a conveyance from the owner of any interest in property, real or personal, is in equity a trustee *ex maleficio* for the person defrauded."  *Jones* v. *Van Doren*, 130 U. S. 684, 691, 30 L. ed. 1077, 1079, 9 Sup. Ct. Rep. 685.  To this end it is immaterial whether the fraud be actual or constructive, if the fraudulent acts of the trustee be such that they result in defeating or preventing the consummation of the object to be attained under the agreement by which the trust arose or was created.  "Fraud, indeed, in the sense of a court of equity, properly includes all acts, omissions, and concealments which

involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.   And courts of equity will not only interfere in cases of fraud to set aside acts done, but they will also, if acts have by fraud been prevented from being done by the parties, interfere and treat the case exactly as if the acts had been done." 1 Story, Eq. Jur. sec. 187, quoted with approval in *Moore* v. *Crawford,* 130 U. S. 122, 128, 32 L. ed. 878, 880, 9 Sup. Ct. Rep. 447.

We are not favored with a transcript of the evidence.   This case is before us upon the bill, motion to dismiss, and decree. The court below found that no actual fraud had been shown; but, in the absence of the testimony, we are relegated to the averments of the bill, since the usual presumption in such cases that the evidence supports the finding of the court is not available to prop up the contentions of the appealing party.   An appellant cannot omit a transcript of the evidence in an equity cause, or a bill of exceptions in a law case, and take advantage of favorable findings based upon the evidence, which are inconsistent with the record upon which the appeal is based. Neither can the appellee be forced to perfect appellant's record. We must, therefore, try the question of fraud, actual or constructive, as shown by the averments of the bill.

Fraud is not an infallible ground for the interposition of equity.   It may constitute a cause of action at law where the law furnishes an adequate and complete remedy.   Nor is the accounting here sought sufficient to invoke equitable jurisdiction, for the balance of the fund in the hands of the casualty company could have been ascertained by the testimony of a single witness.   But where, as here, a trust has been created as part of the consideration entering into the contract, and one of the parties to whom its execution has been intrusted is fraudulently dissipating the fund expressly created to secure the faithful performance of the contract, the other party may invoke relief in equity to prevent the continuation of the fraud; and where equity thus takes jurisdiction it has jurisdiction for all purposes.

There is no error in the decree between Hight and the im-

provement company; but we come now to the consideration of the appeal of the intervening defendants. Their answer sets up a claim for labor and materials purchased in building these houses. It is affirmatively averred in the answer "that the building loan of $4,000 per house, referred to in said bill, was negotiated by the defendant Hight for the specific and sole purpose of paying for the building of the houses to be erected by him on the lots purchased by him from the plaintiff, which is to say, that said money was borrowed by the said Hight to pay for the material and labor used in building said houses; that these defendants and each of them knew of the loan contract between the defendants Harry E. Karr and Charles A. Valentine, before supplying their aforesaid material and labor, and were informed and promised by the defendant Hight, on behalf of himself as well as on behalf of the Hight Company, that the said loan was to be used for the purpose aforesaid; and they relied upon this representation and promise as the basis of the credit they extended to the Hight Company, and not upon the individual responsibility of the Hight Company."

They then set out the paragraph of the bill where the improvement company avers: "The said defendant New Amsterdam Casualty Company agreed to write such a bond conditioned upon the completion of the said houses free of all such liens, provided the said $48,000 [to] be paid by the defendant Maryland Title Company when d᠎ ᠎᠎ounting said notes of the defendant Valentine payable to the ᠎rder of said defendant Karr, should be disbursed by it, and the whole amount of the said $48,000 paid to it, the said defendant the New Amsterdam Casualty Company, in order that it might be assured that the whole of said building loan might be available for the bills of labor and materialmen in constructing said dwellings." It is then averred "that, up to the present time, the proceeds from said loan have been so applied and the balance due these defendants have not been paid them on account of the inability of the Hight Company to collect the balance of said loan, owing to the injunction issued in this cause."

It is further averred "that, independently of the truth or falsity of the charges of fraud, misrepresentation, and breach

of contract made by the plaintiff in its bill against the defendant Hight, these defendants are entitled to have paid out of said balance the respective amounts due them for materials and labor furnished in said buildings, before any portion of said balance should be applied to compensate the plaintiff for its alleged damage, and that in the circumstances said balance is a trust fund in favor of your defendants." They pray that the balance of the fund be declared a trust fund in favor of these defendants, and for such other and further relief as the nature of the case may require.

The ground upon which the improvement company is entitled to invoke equitable relief against Hight opens the door to the interveners. The improvement company's right to equitable relief rests upon the creation of this fund for the specific purpose of erecting the buildings as part of the consideration for the conveyance of the lots. Hight was required not only to secure the fund, but to apply it to the use for which it was created. Hight, in carrying out the trust, agreed that it should be held by the casualty company for the express purpose of paying for the labor and materials which went into the houses. By the averments of the answer the interveners were paid out of this fund, and, but for the action of the improvement company, they would have been paid in full from the balance in the hands of the casualty company. The creation of this fund for the purpose indicated being part of the contract between Hight and the improvement company, it logically follows that the improvement company can, with respect to these interveners, rise no higher than Hight. Hight's agreement to set aside this fund for the satisfaction of the interveners' claims was well within the scope of the authority vested in him by the terms of the contract with the improvement company. Hence, the improvement company cannot assert a claim to the fund prior and superior to the interveners.

The basis of the improvement company's cause of action is that, by reason of the fraud committed by Hight, the property, with the cheap houses constructed thereon, would not sell for sufficient to satisfy the trusts against it. This averment fixes the futility of requiring the interveners to resort to the legal

remedy of mechanics' liens. Besides, with the fund created under their contract with Hight, they were not required to resort to the legal remedy, since the improvement company was clearly not in position to deprive them of their right to be paid from the fund.

The liability of the improvement company and Hight being equal in this transaction, and Hight's conduct being the action of both, the case of *Anglo-American Sav. & L. Asso.* v. *Campbell,* 13 App. D. C. 581, 600, 43 L.R.A. 622, is strongly in point. In that case Lea (as here Hight) borrowed from the association $46,000 with which to erect buildings. On completion of the buildings, there remained undisbursed $3,000 in the possession of the association. This fund Campbell, the material-man, claimed was impressed with an equitable trust in his favor. The material had been furnished on the promise of Lea that the building loan should be used to pay for the labor and materials entering into the construction of the buildings, just as a similar promise was here made by Hight. Keeping in mind the facts in the present case, the following language of Mr. Justice Shepard, in the *Anglo-American Case,* is decisive here: "The written contract with Campbell shows the times of his payments corresponding with those of the advances to be made to Lea. They knew the details of the loan contract and say that they relied upon it as the basis of the credit extended to Lea. That they did so, and did not rely upon the individual capacity of Lea, or their right to a last lien upon the premises, is supported by every reasonable inference deducible from the surrounding circumstances. Lea was engaged in building upon land for which he had not paid, and that was under mortgages to secure at least two thirds of the purchase money. The existence of these mortgages emphasized the incapacity of Lea to build without a prearranged loan, that was attested by the contract with the association for the express purpose of building. It appears, moreover, that the loan could not be obtained without giving the mortgage for its security priority over the second purchase-money mortgage. It requires very little testimony, therefore, to produce the conclusion that, without confidence in the payment to Lea of the full amount of the loan contracted

for, the appellees would not have extended him credit for their labor and materials."

We think that the improvement company, by the terms of its contract with Hight and the authority reposed in Hight to carry the agreement into effect, is estopped to claim an equitable right to this fund prior and superior to that of the intervening defendants.

The decree in the case of the intervening appellants against the improvement company (appeal No. 3089) is reversed, with costs, and the cause is remanded with directions to reinstate the answer and proceed with the trial of the cause. The decree in the case of the improvement company against Hight (appeal No. 3085) is affirmed, with costs, and the cause is remanded with directions to the court to modify the decree, if so advised, to conform with the final decree entered in cause No. 3089.

Appeal No. 3085 *affirmed and remanded.*
Appeal No. 3089 *reversed and remanded.*

A petition for the allowance of an appeal to the Supreme Court of the United States in No. 3085 was denied April 5, 1918.