# DAVIDSON *v.* E. F. BROOKS COMPANY.

---

### CONTRACTS; MECHANICS' LIENS.

**1.** The owners of lots are liable for labor and material ordered by one of them and furnished in the construction of houses on the lots, where the houses were built under a contract between them and a builder, which required the owners to raise a given amount of money on the lots by first and second deeds of trust, the first trust representing the estimated cost of building the houses, and the second trust the value of the lots and commissions, and which provided that the builder should receive for his services certain of the lots, assume the trusts on them, and pay proportionately any excess of cost over loans, and the owners were to retain title to the other lots, assuming all trusts and paying proportionately any excess of cost over loans; and it is immaterial that the legal title of the property was in an agent of the owners, and not in the owners themselves, and that in the books of the materialman the account was in the name of the builder, and not of the owners.

**2.** If land sought by bill in equity to be subjected to a mechanics' lien is sold under a deed of trust, an award for any deficiency against the owners of the property is properly made if they ordered the labor and material. (Construing Sec. 1258, D. C. Code, 31 Stat. at L. 1388, chap. 854.)

No. 2968. Submitted January 3, 1917. Decided March 6, 1917. Motion for reargument granted March 26, 1917. Reargued April 3, 1917. Decided on reargument June 1, 1917.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia awarding a money recovery against them in a suit to enforce a mechanics' lien, the land sought to be subjected to the lien having been sold under a deed of trust.                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

This appeal is from a decree of the supreme court of the District of Columbia in an action brought by appellee, the E. F. Brooks Company, to enforce a mechanics' lien by bill in equity for labor and material furnished in the erection of thirteen houses in this District.

It appears that appellants, H. Bradley Davidson and John C. Davidson, copartners engaged in the real estate business, entered into the following contract with one John H. Nolan, a defendant below:

Washington, District of Columbia, March 26, 1912.

This agreement, signed in duplicate, entered into this 26th day of March, 1912, by and between Davidson & Davidson, parties of the first part, and John H. Nolan, party of the second part, all of the District of Columbia.

Witnesseth: The said party of the first part agrees to make a building loan payable to the said party of the second part or his assigns, in the sum of sixty-seven thousand ($67,000) dollars, to be secured by a deed of trust (to be executed and recorded before the starting of any building operations) as follows: Five thousand ($5,000) dollars on each of the eleven lots, Nos. 51 to 59, inclusive, and Nos. 61, 62, and six thousand ($6,000) dollars on each of two lots Nos. 60 and 63, all in square 2599, for three years at 6 per cent interest, and also a second deed of trust for twenty-two thousand and one hundred ($22,100) dollars securing notes for $1,700 on each of above lots, payable on or before March 26th, 1914, at 6 per cent interest.

It is mutually agreed that from the total sum of $89,100 the sum of $22,100 as payment in full for cost of ground and for

commission on loans shall be deducted by the parties of the first part, leaving $67,000 to be paid out to the said party of the second part as the building of the houses progresses, in sums not to exceed $4,000 at any one time, and not oftener than every two weeks from the time the buildings are commenced, and the balance when the buildings are completely finished.

It is understood the said party hereto of the second part agrees to complete free from mechanics' or other liens thirteen three-story houses on the above-mentioned thirteen lots as per plans and specifications prepared by John M. Donn, architect, provided that the payments are made to him as above stated; and is to complete the same within six months from said date of commencement. Said buildings to be completely finished, including mantles, gas and electric lighting fixtures, papering, kitchen range, and gas hot-water heater, and ready for occupancy.

Any cost exceeding said loans to be divided between the parties of the first and second part as follows:

First. Said party of the first part is to retain title to lots 51 to 54 inclusive; 61, 62, and 63, assume all trusts and pay proportionately for any excess of cost above loans.

Second. Said party of the second part is to take title to lots 55 to 60 inclusive, as payment for builders' commission, assume trusts on said lots, and pay proportionately for any excess of cost above loans.

Interest on the whole trust to begin when the papers are signed. No other commission or cost to be deducted by the parties of the first part on account of said loans.

Witness our hands and seals, this 10th day of April, 1912.

Davidson and Davidson.

John H. Nolan.

The title to the lots on which the houses were to be erected, though in appellants, was, for convenience, held in the name of Charles H. Davidson. Appellants caused Charles H. Davidson to convey the lots by deed to one Edwin A. Martin. Martin thereupon executed trust notes in the sum of $89,100,—a first

deed of trust to secure $67,000 of the notes, and a second deed of trust for the remaining $22,100. Concurrent therewith, at the same time and place, Martin conveyed the lots back to Charles H. Davidson. The deed from Davidson to Martin and the deeds of trust were immediately recorded, but the deed from Martin reconveying to Davidson was withheld from record for than one year. Meantime, the record title stood in Martin. The trust notes were indorsed immediately upon execution by Charles H. Davidson to appellant firm, who negotiated the first trust notes, and the proceeds went into the building of the houses.

Nolan proceeded with the construction of the houses almost to completion, when he became financially embarrassed and was finally adjudged a bankrupt. Appellants took over the property and completed the houses. Attempt was made by the trustees to sell the property under the second deed of trust, when the bill in this action was filed, praying that the trustees be restrained from selling said property; that the deeds of trust be postponed to the lien of plaintiff; "that a decree may be passed herein making sale of the properties aforesaid free and clear of the deeds of trust aforesaid, one or both of them, and that from the proceeds of sale plaintiff's claim may be paid; * * * that if for any reason there should be a deficit in the amount of money said houses bring when sold, that plaintiff may have a decree for such deficit as against the defendants, H. Bradley Davidson, John C. Davidson, and John H. Nolan, jointly and severally."

The learned trial justice based his decree upon a finding of fact, in effect, that appellants were partners; that they at all the times mentioned were the owners of the real estate described in the petition; that the contract entered into with Nolan made them and Nolan partners for the purpose of constructing the houses; that the houses were constructed by said partnership and the material furnished by appellee corporation before the bankruptcy proceedings against Nolan; that appellants "in person ordered from the plaintiffs and agreed with the plaintiffs to pay for the said labor and materials;" that at the time this suit was brought plaintiff had a valid lien on the property in

question, and that the property had been sold and the proceeds derived therefrom were insufficient to satisfy the lien.

On these findings judgment was entered against appellants for the full amount claimed, with interest and costs, from which decree this appeal was taken.

*Mr. Douglas S. Mackall, Mr. John C. Gittings, Mr. J. B. Carter* and *Mr. Thomas M. Gittings,* for the appellants, in their brief cited:

*Rankin* v. *Failey,* 29 Mo. App. 587; *Newberger* v. *Friede,* 23 Mo. App. 631; *Butler* v. *Merrick,* 24 Ill. App. 628; *Kelley* v. *Gaines,* 24 Mo. App. 506; *Roach* v. *Rector,* 13 Ark. 521; *Municipal Pav. Co.* v. *Herring,* — Okla. —, 150 Pa. Rpt. 1067; *McPherson* v. *Hardin,* 40 App. D. C. 404; *Starkweather* v. *Dyer,* 30 App. D. C. 149; *Clark* v. *Sidway,* 142 U. S. 682; *Slater* v. *Vanler Hoogt,* 25 App. D. C. 417; *Meehan* v. *Valentine,* 145 U. S. 611; *Estabrook* v. *Woods,* 192 Mass. 499; *Demarest* v. *Koch,* 129 N. Y. 218; *Furber* v. *Page,* 143 Ill. 622; *Bird* v. *Morrison,* 12 Wis. 128; *Bruce* v. *Hastings,* 41 Vt. 383; 30 Cyc. 483; *Fisher* v. *Hume,* 6 Mackey, 9; *Floyd* v. *Wallace,* 31 Gill. 668; *Logan* v. *Bond,* 13 Gill, 192; *Funk* v. *Babbit,* 156 Ill. 408; *Quinn* v. *Ely,* 37 N. J. Eq. 564; *Terre Haute R. Co.* v. *Peoria R. Co.* 167 Ill. 266; *Hope* v. *Johnson,* 38 Fla. 55; *Abbott* v. *Abbott,* 189 Ill. 488; *Buzzard* v. *Huston,* 119 U. S. 347; *Padmer* v. *Flemming,* 1 App. D. C. 4; *Kennedy* v. *Hazelton,* 121 U. S. 667; *Crocket* v. *Lee,* 7 Wheat. 522; *Grisswell* v. *Newman,* 21 Wall. 481; *Kent* v. *Lake Superior Ship Co.* 144 U. S. 75; *Jackson* v. *Ashton,* 11 Pet. 229; *James* v. *McKeanor,* 6 Johns. 564; *Grainerd* v. *Arnold,* 27 Conn. 617; *Stucky* v. *Stucky,* 30 N. J. Eq. 546; 16 Cyc. 403, 404.

*Mr. Henry F. Woodard, Mr. T. Morris Wampler,* and *Mr. Daniel Thew Wright,* for the appellee, in their brief cited:

*Corey* v. *Vadwell,* 86 Mich. 570; *Campbell* v. *N. W. Eckington Co.* 229 U. S. 561, 28 App. D. C. 494; *Camp* v. *Boyd,* 229

U. S. 552; *Dow* v. *Dempsey,* 57 Pac. 355; *Emack* v. *Rushen-berger,* 8 App. D. C. 249; *Farmers' Ins. Co.* v. *Ross,* 29 O. S. 429; *Hackett* v. *Stanley,* 115 N. Y. 625; *Hurley* v. *State,* 46 O. S. 320; *Jones* v. *Davies,* 60 Kan. 310; *Johnson* v. *Alexander,* 167 N. Y. 605; *Meehan* v. *Valentine,* 145 U. S. 623; *Mc-Carthy* v. *Holtman,* 19 App. D. C. 150; *Purvis* v. *Butter,* 87 Mich. 248; *Pooley* v. *Driver,* 5 Ch. Div. 458; *Parker* v. *Can-field,* 37 Conn. 250; *Rowland* v. *Long,* 45 Md. 439; *Robinson* v. *Compher,* 57 Pac. 754; *Spaulding* v. *Stubbins,* 86 Wis. 262; *Wood* v. *Vallette,* 7 O. S. 172, D. C. Code, Secs. 1037a, 1258.

*Mr. Paul Sleman* and *Mr. Henry P. Blair* filed a brief as *amicus curiœ.*

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It will be unnecessary to consider the more difficult question of the existence of a partnership between appellants and Nolan, since the appeal can be disposed of upon the single ground that appellants were the owners of the property in question. The facts upon which this finding was based are substantially admitted by appellants in the answer to the bill. Appellants aver in their answer that they "were engaged as copartners in the real estate business under the name of Davidson & Davidson, and the title to the real estate belonging to the said copartnership, for the purpose of convenience and to distinguish the said property from property belonging to the individual members of said firm, and for the purpose of facilitating the handling and transfer of the same in the course of their business, has been vested in the defendant Charles H. Davidson, who has been, and is, an employee of the said firm; and that the real estate mentioned and described in these proceedings, as well as other real estate belonging to said copartnership, was vested in the said Charles H. Davidson for the purposes aforesaid."

As to the state of the title during these transactions, appellants admit the conveyance from Davidson to Martin, the execution of the deeds of trust and the trust notes by Martin to

Davidson, and the indorsement of the notes by Davidson to appellants, and aver "that after the execution of the deeds of trust mentioned, the defendant Edwin A. Martin conveyed said real estate to said Charles H. Davidson, and aver the fact to be that the said conveyance to the said Charles H. Davidson was made with the understanding that he should hold title to the said real estate as trustee in pursuance of the agreement aforesaid of March 26, 1912, and for no other purpose whatsoever. They admit that the said Charles H. Davidson has since held title to said real estate as trustee as last above set forth. These defendants further admit that said last-mentioned deed to Charles H. Davidson remained unrecorded for a considerable period of time after its execution, but aver the fact to be that prior to the filing of this suit, the defendants, discovering that said deed had been inadvertently omitted from the record, caused the same to be duly recorded among the land records of the District of Columbia."

The transfer of title from Davidson to Martin, the execution of the notes, deeds of trust, and the reconveyance from Martin to Davidson, and the indorsement of the notes from Davidson to appellants, left the title just where it started, and merely enabled appellants to hold title and at the same time negotiate the securities. This shifting of title and securities all occurred before the contract was made with appellee company. During all the time that appellee was engaged in furnishing labor and material for the construction of these houses, the title remained vested in Charles H. Davidson, the admitted agent of appellants for the purpose of holding title to partnership real estate. Hence the property he conveyed to Martin belonged to appellants, and when he took it back it came back as the property of appellants.

It will not do now to contend that Charles H. Davidson held this property as trustee under the contract between appellants and Nolan. The contract contemplated no such proceeding. It required appellants to raise a certain amount of money by first and second trusts upon their own lots. No shifting of title was necessary to legitimately accomplish this feat. The second trust, which is stated in the contract as representing the value

of the lots and commissions, amounted merely to a convenient method of fixing the proportion which Nolan should assume on the lots which he was to receive for carrying out his part of the contract. This construction is fortified by the language of the contract itself. Appellants were "to retain title to lots 51 to 54 inclusive; 61, 62, and 63, assume all trusts and pay proportionately for any excess of cost above loans." How could they retain title to property in the hands of a trustee for all the parties to this agreement? On the other hand, Nolan was "to take title to lots 55 to 60 inclusive as payment for builders' commission, assume trusts on said lots, and pay proportionately for any excess of cost above loans." Why should he gain title in a manner different from appellants if, as contended, each party was to acquire title ultimately from a trustee holding title for the benefit of all the parties to the contract? It may be further suggested that, if it was the agreement that Davidson should hold the title as trustee for the parties to the contract, why was it not so stated in the conveyance from Martin to Davidson? If the deed had so stated, and had been promptly recorded, it would have been notice to appellee of the existence of the trust.

We think the court below was right in holding that appellee company contracted directly with appellants as owners of the property, and that they are liable as owners. This finding is based upon a conversation which the Brooks's had with Nolan and John C. Davidson, in which, after some question as to the reasonableness of the price named by appellee for doing the work, Davidson directed appellee company to proceed and furnish the labor and material upon the terms originally named by it. This conclusion is not only sustained by the weight of the evidence, but by the circumstances of the case. The proposal of appellee company, while addressed to Nolan, was to perform the work for Martin, assuming at the time, as it had a right to do, that Martin was the owner of the property and the party for whom Nolan was constructing the houses. It is significant that Nolan nowhere pretends that any other acceptance of this proposition was ever made, except in the conversation in which we have found that John C. Davidson directed appellee to per-

form the work on the terms stated in its proposal, it having been discovered by appellee between the date of making the proposal and the date of the conversation with Nolan and Davidson that the Davidsons, and not Martin, were the real owners.

Considerable is sought to be made by appellants of the manner in which appellee company kept its book account of this transaction. We regard it as of little importance, other than evidential, whether the account was entered against Nolan or the Davidsons. The contract being with the Davidsons as to this part of the work, Nolan became their agent, and the mere form of entering the account in appellee's book would furnish no relief to appellants.

The court, finding that the property had been sold to satisfy the trusts, properly held that for any deficiency appellants, as owners of the property, are liable. D. C. Code, sec. 1258. [31 Stat. at L. 1388, chap. 854.]

The decree is affirmed with costs.                    *Affirmed.*

Mr. Justice HITZ, of the Supreme Court of the District of Columbia, sat with the Court in the hearing and determination of this appeal, in place of Mr. Chief Justice SHEPARD.